ROSE HANSEN, ADMINISTRATRIX, RESPONDENT, v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

Submitted July 9, 1917—Decided March 4, 1918.

The decedent was employed as a locomotive fireman. He came in from his run Saturday evening; he was to go out again at three-forty-five A. M. on Monday. On Sunday he went to the railroad yard to get his tools from a "pony" engine and put them on a "pick up" engine on which he might go out Monday morning, and also to get overalls to take home to be washed. While going through the railroad yards he was struck by a locomotive and killed. *Held*, that he was not at the time engaged in interstate commerce and his administratrix could not maintain an action under the Federal Employers' Liability act.

On appeal from the Hudson County Circuit Court.

For the respondent, *Alexander Simpson* (*Weller & Lichtenstein*).

For the appellant, *William H. Carey* (*Vredenburgh, Wall & Carey*).

The opinion of the court was delivered by

SWAYZE, J. The most favorable view for the plaintiff would permit the jury to find the following facts, the statement being extracted from the brief of her counsel:

This action was brought under the Federal Employers' Liability act. Hansen and the defendant railroad company were engaged in interstate commerce in the operation of a locomotive on which Hansen was fireman. The dispute is whether deceased was engaged in interstate commerce at the time and place of his death.

He was killed on Sunday, August 3d, 1913, at about noon, under the following circumstances: On Saturday evening, August 2d, he returned from his regular run, went home, and

shortly after eleven o'clock on Sunday morning took certain keys which he had in his working trousers, and informed his wife just before leaving the house, that he was going to the round house where an engine called a "pony engine" was standing, for the purpose of taking his tools therefrom and placing them on the "pick-up" engine, which was scheduled to leave with him in interstate commerce the following morning at three forty-five o'clock, and also to get his dirty overalls to bring home to be washed. He had worked on this "pony engine" for some time before it was sent to a repair shop, and thereafter was put to work on the "pick-up" engine. Hansen took these keys to go to the "pony engine" to get his tools, it appearing that at that time there was a scarcity of firemen's tools in the yard. While walking through the railroad yards on his way to the round-house, he was struck by an engine, which ran him down, without any signal or warning, and without having a lookout thereon. In addition the evidence showed that the "pick-up" train never ran on Sunday.

We pass by other interesting questions presented by the case, and deal only with the question whether there was any evidence that the decedent was at the time of the accident engaged in interstate commerce. In determining this question we must be guided by the rule which has been established in a series of cases by the United States Supreme Court, of which we need cite but two. *Shanks* v. *Delaware, Lackawanna and Western Railroad,* 239 *U. S.* 556; *Erie Railroad Co.* v. *Welsh,* 242 *Id.* 303. In the former Mr. Justice Van Deventer collected the previous cases. In the latter Mr. Justice Pitney stated the rule as follows: "The true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act." As a further test he adds: "The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the F. D. yard as to be a part of it or a necessary incident thereto."

Tried by these tests the plaintiff's case fails. The decedent had completed one run the day before. His next run was to be the day after. In this the case resembles *Minneapolis and St. Louis Railroad Co.* v. *Winters, Id.* 353. The decedent was doing nothing at the time of the injury but going for tools and overalls which he was under the expectation he might need the next day upon another interstate journey. But this was nothing more than a mere expectation; he might have been ordered to other work; his act in getting the tools and overalls could not be directly and immediately connected with his previous work since he did not expect to find the tools and overalls on the "pick-up" locomotive he had been on the day before but on what is called the "pony" engine on which he had worked at some previous time. Nor was his act in going for the tools and overalls directly and immediately connected with the work on which he expected to be employed the following day, since that work was subject to change, and even if he ran on the same train he did not know what locomotive he would have since that would only be determined the following morning. In fact the engine which took out the "pick-up" train had not come in at the time of his death. He therefore could not put the tools and overalls where they would be needed when the new run began. In applying these tests to the present case it is important also to bear in mind that the accident happened on Sunday. There is nothing to show that decedent was under any obligation or under any orders to work on that day, or even that the defendant knew that he proposed to be at the railroad yard. It was unlawful for him to work on Sunday unless in certain special circumstances which are not shown to have existed in this case. This fact does not indeed excuse the defendant from liability for a tort, but where, as in the present case, the defendant is sought to be held in an action where the ordinary rules that would govern in case of a tort have been relaxed by statute the plaintiff must prove the facts necessary to entitle her to the benefit of the statute, and of these the important one is that of employment at the time of the injury. Where the act at

the time is *prima facie* illegal, employment cannot be presumed.

For these reasons we think the decedent was not engaged in interstate commerce at the time he was injured and this action cannot therefore be sustained. The judgment must be reversed and the record remitted to the end that there may be a new trial. No costs will be allowed.

*For affirmance*—THE CHANCELLOR, MINTURN, HEPPENHEIMER, JJ. 3.

*For reversal*—THE CHIEF JUSTICE, SWAYZE. TRENCHARD, PARKER, BERGEN, WILLIAMS, JJ. 6.